UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GLENN KINDLER,

       Plaintiff,

  -v-                                                     No. 17 CV 9896-LTS-RWL

THE CITY OF NEW YORK, SALATHIA S.
MIXON, DAVE HOWARD, E. BLACKE, K.
MASIELLO, MARY SPRINGETT,
THERESA BOWERS, FRANCINE SMITH,
AND JOHN DOE #1,

       Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

       In this action brought pursuant to 42 U.S.C. § 1983 against New York State Department of Corrections and Community Supervision ("DOCCS") employees Dave Howard, E. Blacke, K. Masiello, Mary Springett, Theresa Bowers, Francine Smith (collectively, the "State Defendants"), the City of New York ("the City"), and New York City Department of Corrections ("DOC") employees Salathia S. Mixon and John Doe # 1 (collectively, the "City Defendants"), Plaintiff Glenn Kindler asserts claims for violation of his rights under the Fourth, Eighth and Fourteenth Amendments to Constitution of the United States. This Court has subject matter jurisdiction of the case pursuant to 28 U.S.C. § 1331. This action has been settled as against the City Defendants and all claims as to those Defendants have been dismissed. (<u>See</u> docket entry no. 91.) Now before the Court is a motion by the State Defendants to dismiss Kindler's First Amended Complaint (docket entry no. 41, the "FAC"). (Docket entry no. 68.) The Court has reviewed the parties' submissions carefully and, for the reasons that follow, the State Defendants' motion is granted.

BACKGROUND

The following recitation of relevant facts is drawn from the FAC, the well-pleaded factual content of which is taken as true for purposes of this motion practice.

On or about June 21, 2012, Plaintiff Glenn Kindler was arrested in New York County and charged under indictment number 2907-2012. (FAC ¶ 22.) Kindler was sentenced on October 25, 2012, to a term of two to four years' imprisonment (the "State Sentence"), and was transferred on November 9, 2012, to DOCCS custody in connection with the State Sentence. (FAC ¶¶ 23-24.) While in DOCCS custody, Kindler was approved to participate in a temporary work release program. (FAC ¶ 25.) On the morning of April 19, 2014, Kindler was temporarily released from a DOCCS facility with instructions to return by 5:00 p.m. that same day. (FAC ¶ 26.) While on temporary release, Kindler was arrested for allegedly stealing a coffee valued at $2.49. (FAC ¶ 27.) Kindler was charged with petit larceny and was arraigned on April 20, 2014. (FAC ¶ 29.) That same day, DOCCS lodged an absconder warrant against Kindler. (FAC ¶ 31.) Due to the absconder warrant and his inability to make bail, Kindler was held in DOC custody at Rikers Island. (FAC ¶¶ 30, 32.) Plaintiff alleges that DOCCS officials were made aware on April 20, 2014, that Kindler was in DOC custody. (FAC ¶¶ 33, 35.) On May 5, 2014, Kindler pled guilty to the petit larceny charge and was sentenced to fifteen days of imprisonment, or time served. (FAC ¶¶ 36-37.) Following his sentencing on the petit larceny charge, Kindler was returned to DOC custody at Riker's Island due to the outstanding absconder warrant issued by DOCCS. (FAC ¶ 38.) Kindler remained in DOC custody until January 29, 2015. (FAC ¶ 39.)

On January 29, 2015, Kindler was transferred to DOCCS custody and placed at the Fishkill Correctional Facility. (FAC ¶¶ 46, 55.) Plaintiff alleges that, under New York Penal Law § 70.30(7), he was entitled to jail time credit towards his remaining State Sentence for the 285 days he spent in DOC custody between April 20, 2014, and January 29, 2015. (FAC ¶ 47.)

However, under DOCCS policies and practices, Kindler cannot be awarded jail time credit without a certificate issued by DOC. (FAC ¶ 49.) At the DOC, jail time certificates were typically issued by the Jail Time Records Coordinator ("JTRC"), an employee tasked with ensuring that such certificates are properly issued. (FAC ¶ 40.) The JTRC position was left vacant for several months after January 1, 2015, when the DOC employee who previously served in that role, Venita Mabra, retired. (FAC ¶ 40-42.) During this time, other DOC staff members performed JTRC duties on a rotating basis, but with limited training and oversight. (FAC ¶¶ 43, 45.) Specifically, on January 29, 2015, when Kindler was transferred to DOCCS custody, John Doe # 1 was responsible for preparing a jail time certificate, but failed to do so. (FAC ¶¶ 50-52.) Kindler alleges that a DOC computer database would have informed John Doe #1 that he was required to perform a manual calculation of Kindler's jail time, but John Doe # 1 either failed to perform the calculation, or failed to report the results of his calculations to DOCCS and to save a copy of his calculations in Kindler's DOC file. (FAC ¶ 53.) Kindler asserts that, if DOC had properly issued a jail time certificate, he would have been credited the 285 days he spent in DOC custody and would have been entitled to conditional release by DOCCS on or about February 12, 2015.[1] (FAC ¶ 59.)

On February 3, 2015, Defendant Mary Springett reviewed Kindler's sentence computation and failed to credit Kindler for time spent in DOC custody, determining instead that Kindler was not eligible for conditional release until November 27, 2015. (FAC ¶ 62.) After receiving Springett's sentence computation, Kindler notified DOCCS staff that he had not been

---

[1] Under New York Penal Law § 70.40(b), an inmate, upon his request and subject to certain conditions, must be "conditionally released" from incarceration when his total "good behavior time" equals the unserved portion of the maximum of his indeterminate sentence.

credited with time served in DOC custody. (FAC ¶ 63.) On February 4, 2015, Defendant Dave Howard reviewed Kindler's sentence computation, but also failed to credit Plaintiff with time spent in DOC custody. (FAC ¶ 64.) After Howard's review, Plaintiff continued to request that DOCCS staff review and correct his sentence calculation. (FAC ¶ 65.) For example, on March 12, 2015, Kindler received a memorandum from the Inmate Records Office stating that it would "request jail time that should be credited toward [Kindler's] abscondence time," but neither Springett nor Defendant Theresa Bowers, the Inmate Records Coordinators at that time, requested a jail time certificate or took any action to correct Kindler's erroneous time computation. (FAC ¶¶ 66-67.) Similarly, on March 24, 2015, Defendant E. Blacke issued a memorandum informing Kindler that DOCCS had no jail time certificate on file reflecting Kindler's detention in DOC custody, and suggested that Kindler request one from DOC, but took no further action. (FAC ¶¶ 68-69.) On August 21, 2015, Bowers once again reviewed Kindler's sentence computation and failed to credit Kindler with time spent in DOC custody. (FAC ¶ 70.) On August 31, 2015, DOCCS transferred Kindler to the Wallkill Correctional Facility. (FAC ¶ 72.) On September 30, 2015, Defendant K. Masiello responded to Kindler's complaints and stated that she was "still researching" his case. (FAC ¶ 73.) Plaintiff alleges that Springett, Howard, Bowers, Blacke, and Masiello were all aware from DOCCS records that the absconder warrant was lodged on April 20, 2014, and that Kindler was detained by DOC in connection with that warrant until he was transferred to DOCCS custody on January 29, 2015, but that no Defendant took any steps to credit Kindler with jail time or to correct the error. (FAC ¶¶ 58, 64, 67, 69, 71, 74.)

Kindler also made efforts in February 2015 to contact DOC to obtain a jail time certificate. (FAC ¶ 75.) On March 6, 2015, a DOC Records Access Officer responded to

Kindler's inquiries by directing him to contact Mabra, even though Mabra had retired on January 1, 2015. (FAC ¶¶ 76-77.) Kindler sent letters to Mabra in March and April 2015, which were reviewed by Mabra's successor, Salathia S. Mixon. (FAC ¶¶ 78-80.) Even though Mixon was aware after reviewing Kindler's records that he was in DOC custody from April 20, 2014, to January 29, 2015, and that DOCCS refused to credit Kindler with jail time without a DOC-issued jail time certificate, she did not issue a certificate or take any other action in response to Kindler's letters. (FAC ¶¶ 81-82.)

On October 13, 2015, Defendant Francine Smith emailed Mixon inquiring about the issuance of a jail time certificate, noting that "it appears that a jail time certificate should be issued." (FAC ¶ 83.) That same day, Mixon issued the requested jail time certificate. (FAC ¶ 84.) DOCCS received the certificate on October 15, 2015. (FAC ¶ 86.) Kindler alleges that Smith failed to take steps to have him released immediately. (FAC ¶ 88.) Kindler was finally released from DOCCS custody on October 22, 2015. (FAC ¶ 89.) Kindler alleges that he spent 252 days in DOCCS custody after February 12, 2015, the date on which he was entitled to be released conditionally. (FAC ¶ 90.) The FAC seeks damages for deprivation of Kindler's rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution. (FAC ¶ 94.)

## DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A court "need not

accord legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal quotations omitted).

Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. State Defendants argue that Kindler's Fourth Amendment claim must be dismissed because Plaintiff was taken into custody in connection with lawful arrests and thus was not subjected to an illegal seizure. Kindler does not address this argument in his opposition to the State Defendants' motions to dismiss, and the FAC contains no facts from which the Court can infer that Kindler was subject to a fresh seizure while in DOC or DOCCS custody. Because the Court discerns no plausible factual basis for a Fourth Amendment claim in the allegations of the FAC, and because Kindler advances no argument demonstrating that such a basis exists, his Fourth Amendment claim is dismissed.

Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," including those which "involve the unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 297 (1991). "[U]nnecessary and wanton" inflictions of pain include those that are "totally without penological justification." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). "The degree to which a harm is 'unnecessary' in the sense of being unjustified by the exigencies of prison administration will affect the state-of-mind requirement a plaintiff must meet to demonstrate that a particular prison official violated the eighth amendment."

Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989). In the context of Eighth Amendment claims asserted by prisoners who have been held beyond their maximum term of incarceration, courts have required plaintiffs to show that the defendant was deliberately indifferent to whether the prisoner suffered an unjustified deprivation of his liberty. Id. at 1110; see also Calhoun v. N.Y.S. Div. of Parole Off., 999 F.2d 647, 654 (2d Cir. 1993) (citing Sample).

State Defendants argue that, because Kindler was released before the expiration of his maximum term of incarceration, any detention past Kindler's conditional release date did not, as a matter of law, expose him to "cruel and unusual" punishment. Citing cases involving brief, five to seven-day periods of continued confinement beyond a plaintiff's maximum sentence, State Defendants contend that, if courts are reluctant to find an Eighth Amendment violation in the context of confinement beyond a maximum release date, "it follows that a plaintiff held beyond a conditional release date cannot state a claim for cruel and unusual punishment." (Docket entry no. 69 at 7 (emphasis added).)

The Court is not persuaded that the distinction drawn by the State Defendants between custody beyond a plaintiff's maximum term of incarceration and custody beyond his conditional release date is determinative of the question of the potential for an Eighth Amendment violation. Under New York Penal Law § 70.40(b), a person serving an indeterminate sentence "shall" be conditionally released upon request when his total "good behavior time" is equal to the unserved portion of his maximum term. Thus, conditional release from an indeterminate sentence is "a form of automatic parole." N.Y. Penal Law § 70.40 Practice Commentary. Kindler has alleged plausibly that he was entitled under state law to be released on the conditional release date. Kindler's continued confinement for a period of over eight months was sufficiently long to constitute an objectively serious deprivation of his liberty

and there is "no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." Sample, 885 F.2d at 1108. Moreover, taking Kindler's allegations as true for purposes of this motion practice, his detention for such a substantial portion of the period during which he was entitled to conditional release served no discernible deterrent or retributive purpose, nor was it necessary to accommodate the exigencies of prison administration. See id. 885 F.2d at 1108-1109 (discussing the "two relevant senses in which a punishment may be penologically justified," including "where the state intends to impose the challenged harm to fulfill the retributive or deterrent functions of punishment," and where "[t]he administration of a system of punishment entails an unavoidable risk of error."). Under these circumstances, the Court finds that Kindler has stated a claim for violation of his Eighth Amendment rights. However, as explained below, the Court must dismiss Kindler's Eighth Amendment claim because the State Defendants are entitled to qualified immunity.[2]

Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In evaluating a claim under the Due Process Clause, a court must first determine "whether there exists a liberty or property interest of which a person has been deprived" and, if there has been a deprivation of such an interest, must then examine "whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562

---

[2] In light of the Court's determination that the State Defendants are entitled to qualified immunity, the Court declines to address the State Defendants' argument that the FAC fails to allege plausibly that Defendants Smith and Masiello were deliberately indifferent to Plaintiff's continued detention.

U.S. 216, 219 (2011). "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001) (citations omitted). Although the Second Circuit has declined to opine on the "thorny question" of whether New York law creates a liberty interest in conditional release, Doe v. Simon, 221 F.3d 137, 139 (2d Cir. 2000), the court has recognized that inmates may fall along a "continuum" of liberty interests ranging from inmates who may only have a "unilateral hope" of early release to those who have already been released on parole. See Victory v. Pataki, 814 F.3d 47, 59-60 (2d Cir. 2016).

Applying the Second Circuit's reasoning in Victory, it would appear, based on Plaintiff's allegations that he had the requisite amount of good time credit, that Plaintiff had a protectible liberty interest in conditional release in light of the mandatory language of New York Penal Law § 70.40(b). The statute requires that a person "shall" be conditionally released upon satisfaction of certain conditions, constituting "a form of automatic parole." Under the circumstances alleged in the FAC, it appears to have conferred upon Plaintiff a legitimate expectancy of release beyond a simple "unilateral hope" of early release. The deprivation of a protected interest alone is, however, insufficient to establish a viable claim for violation of due process because the plaintiff must also allege plausibly that the procedures available to him to challenge the prolonged detention were constitutionally deficient. To the extent that Kindler alleges that the individual State Defendants acted in a "random and unauthorized" manner by erroneously computing his State Sentence, the Second Circuit has recognized that the availability of an Article 78 or state habeas proceeding "would almost certainly suffice to satisfy the due process clause." Schultz v. Egan, 103 Fed. App'x 437, 441 (2d Cir. 2004). However, to the

extent that Kindler's due process claim challenges the State Defendants' procedure of deferring to DOC paperwork, or State Defendants' failure to provide a process to review or address complaints of miscalculated sentences in the absence of such paperwork, the three-factor test of <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) must be applied to determine what process was due to Kindler. <u>Id.</u> Because the <u>Mathews</u> inquiry is a factual one, dismissal of Kindler's due process claim at the pleading stage on this basis would be inappropriate. <u>See id.</u> ("[B]ecause we are still at the motion to dismiss stage, defendants have submitted no factual information regarding what procedures they use. In addition, because we have no information before us which indicates how promptly inmates can have their grievances addressed through Article 78 proceedings, we cannot conclude at this stage of the lawsuit that the availability of Article 78 proceedings necessarily satisfies due process in this context."). Even assuming, however, that Kindler has made out a plausible claim for violation of his due process rights, the claim must still be dismissed because, as explained below, the State Defendants are entitled to qualified immunity.

Qualified Immunity

State Defendants contend that, even if Plaintiff has alleged plausibly a violation of his Eighth and Fourteenth Amendment rights, qualified immunity shields them from suit. "The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Bradway v. Gonzales</u>, 26 F.3d 313, 317-18 (2d Cir. 1994) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). To determine whether the relevant law was clearly established, a court considers "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on

the subject, and the understanding of a reasonable officer in light of preexisting law." Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014).

As discussed above, few courts in this Circuit have addressed the question of whether an inmate's detention past his conditional release date is constitutionally permissible under either the Eighth or the Fourteenth Amendments. In the due process context, courts have acknowledged that "whether there is a constitutional liberty interest in conditional release is an open question in the Second Circuit." D'Angelo v. Annucci, No. 16-CV-6459 (KMK), 2017 WL 6514692, at *8 (S.D.N.Y. Dec. 19, 2017) (citing cases). Similarly, with respect to the Eighth Amendment's prohibition of cruel and unusual punishment, courts in this district have either assumed a violation, or declined to recognize a violation where the period of detention was significantly shorter than in the case at bar or where the plaintiff had failed to allege deliberate indifference. Compare Peterson v. Tomaselli, 469 F. Supp. 2d 146, 163 (S.D.N.Y. 2007) (finding that plaintiff had failed to demonstrate that his prolonged detention was the product of deliberate indifference, "[e]ven assuming that being released after the expiration of a state-created conditional release date but before the expiration of a maximum sentence constitutes an Eighth Amendment violation") with Hayes v. Annucci, No. 14-cv-8845 (NSR), 2016 WL 1746109, at *5 (S.D.N.Y. Apr. 29, 2016) (no Eighth Amendment violation where plaintiff was imprisoned "only a few days over" his conditional release date) and D'Angelo, 2017 WL 6514692, at *10 (declining to find that a six-month period of detention past conditional release date constitutes an Eighth Amendment violation "[g]iven [courts'] reluctance to find an Eighth

Amendment violation in the context of confinement beyond a <u>maximum</u> release date") (emphasis in original).[3]

Because the case law provides a basis for reasonable officers to disagree as to whether an inmate's detention past his conditional release date is constitutionally permissible, and in the absence of any binding Second Circuit authority on the question, it cannot be said that Plaintiff's detention past his conditional release date constituted a violation of his clearly established Fourteenth or Eighth Amendment rights. State Defendants are, accordingly, entitled to qualified immunity.

<u>CONCLUSION</u>

For the foregoing reasons, State Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint is granted. In light of the dismissal of Plaintiff's remaining claims with respect to the City Defendants, the Clerk of Court is requested

---

[3]  The Court is not persuaded by Plaintiff's argument that his Eighth Amendment right is clearly established for qualified immunity purposes simply because the right to be released after one's maximum term of imprisonment is clearly established. The qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," and thus "the dispositive question is whether the violative nature of the <u>particular</u> conduct is clearly established." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (emphasis in original). Plaintiff's argument defines clearly established law at too high a level of generality to consider adequately the nature of the particular conduct at issue in this case.

to enter judgment in favor of the State Defendants and to close this case.  This Memorandum Opinion and Order resolves docket entry no. 68.

    SO ORDERED.

Dated: New York, New York
       September 19, 2019

<u>/s/ Laura Taylor Swain</u><br>
LAURA TAYLOR SWAIN<br>
United States District Judge